DECISION AND JUDGMENT ENTRY
{¶ 1} Willard E. Morrison appeals his convictions and sentences for attempted murder from the Adams County Court of Common Pleas. On appeal, Morrison contends, pursuant to Crim. R. 11, that the trial court erred in accepting his plea of no contest when it was not made knowingly, intelligently and voluntarily because he indicated on the record that he did not understand the concepts of (1) the mandatory sentence for the gun specification and (2) merger as it relates to the two counts of attempted murder. Because Morrison, after further explanation by the court, indicated that he did understand these two concepts, we disagree. Morrison next contends that the trial court erred by failing to merge his two attempted murder convictions into one conviction for sentencing. Because, pursuant to R.C. 2941.25(B), we find that Morrison committed the two offenses separately, we disagree. Morrison next contends that he *Page 2 
had the ineffective assistance of counsel. Because Morrison bases his arguments on the trial court's violations of Crim. R. 11 and the merger doctrine, and because we find that the trial court did not err, we disagree. Finally, Morrison contends that the trial court violated the Due Process and Ex Post Facto Clauses of our State and Federal Constitutions when it sentenced him. Because we have decided this issue on numerous occasions, we disagree. Accordingly, we affirm the judgment of the trial court.
 I. {¶ 2} On September 5, 2005, Sergeant Rex Branham of the Adams County Sheriffs Department, while in uniform and on duty, stopped a vehicle driven by Morrison at the intersection of State Routes 125 and 348. Morrison exited his vehicle and fired gunshots in the direction of Sergeant Branham with an SKS assault rifle. The shots did not strike Sergeant Branham, but they struck his marked police cruiser. After firing the shots, Morrison returned to his vehicle and fled the scene.
 {¶ 3} Sergeant Branham pursued Morrison in his police cruiser until Branham's cruiser became inoperable close to Compton Hill Road. Morrison then made a sudden u-turn at the intersection of Compton Hill Road, drove back toward Sergeant Branham's disabled police cruiser at a high rate of speed and rammed the police cruiser head-on. As a result, Sergeant Branham and Morrison both suffered severe injuries.
 {¶ 4} A grand jury indicted Morrison on two counts of attempted murder, first degree felonies in violation of R.C. 2903.02 and R.C. 2923.02. The first count included a gun specification. Morrison entered not guilty pleas. *Page 3 
 {¶ 5} After Morrison underwent competency evaluations, the court deemed Morrison competent to stand trial. Morrison then withdrew his not guilty pleas and entered pleas of no contest to both counts of attempted murder and the gun specification. The court accepted his pleas and found Morrison guilty as charged.
 {¶ 6} The court sentenced Morrison to ten years in prison on the count one attempted murder plus an additional seven years on the gun specification. The court sentenced Morrison to eight years in prison on the count two attempted murder. The court ordered that all three terms of prison run consecutive to each other, for a total prison sentence of twenty-five years.
 {¶ 7} Morrison appeals his convictions and sentences and asserts the following four assignments of error: (1) THE TRIAL COURT ERRED WHEN IT SENTENCED MR. MORRISON BASED ON A NO CONTEST PLEA THAT WAS NO KNOWING, INTELLIGENT, AND VOLUNTARY UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTON, SECTION 16, ARTICLE I OF THE OHIO CONSTITUTION, AND CRIM.R. 11; (2) WHERE THE TIRAL COURT DOES NOT MERGE FOR PURPOSES OF SENTENCING DUPLICATIVE CRIMINAT COUNTS, THE CONSECUTIVE SENTENCES THAT RESULT ARE VOID. FURTHERMORE, THE SENTENCE MUST BE VACATED BECAUSE IT VIOLATES DOUBLE JEOPARDY PROTECTIONS AND DUE PROCESS OF LAW; (3) MR. MORRISON WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL WHERE TRIAL COUNSEL: 1) FAILED TO PURSUE WHETHER HIS CLIENT WAS CAPABLE OF UNDERSTANDING HIS PLEA OF "NO CONTEST" BEFORE ENTERING IT; AND 2) FAILED TO PROVIDE THE TRIAL COURT WITH ANY LEGAL POSITION ON *Page 4 
MERGER OF THE SENTENCES FOR THE TWO COUNTS OF ATTEMPTED MERGER, DESPITE HIS ASSURANCE TO THE COUT THAT HE WOULD PROVIDE THAT ARGUMENT FOR THE TRIAL COURT'S ASSISTANCE BEFORE IT SENTENCED MR. MORRISON. COUNSEL'S FAILURES DEPRIVED MR. MORRISON OF HS RIGHTS TO COUNSEL AND DUE PROCESS UNDER THE OHIO AND UNITED STATES CONSTITUTIONS; and (4) APPLICATION OF THE FEBRYARY 27, 2006 FOSTER RULING TO EVENTS OCCURRING ON SEPTEMBER 5, 2005 IS AN UNCONSTITUTIONAL APPLICATION OF RETROACTIVITY IN SENTENCING.
 II. {¶ 8} In his first assignment of error, Morrison contends that his pleas of no contest were not made knowingly, intelligently and voluntarily. He asserts that his severe head injuries suffered as the result of his collision with the police car left him in a state where he could not comprehend the nature of a no contest plea or ht sentencing risks involved therein. He maintains that his responses to the court's questions during his change of plea hearing show a lack of comprehension on his part.
 {¶ 9} In determining whether to accept a plea, trial courts must determine if the defendant is knowingly, intelligently, and voluntarily entering the plea. State v. Johnson (1988), 40 Ohio St.3d 130, syllabus; Crim. R. 11(C). As such, the trial court should engage in a dialogue with the defendant as described in Crim. R. 11 (C). State v. Puckett, Scioto App. No. 03CA2920, 2005-Ohio-1640, ¶ 9. While strict compliance with Crim. R. 11(C) is preferred, reviewing courts will find a plea knowing, intelligent, and voluntary if the judge accepting the plea substantially complies with Civ. R. 11(C). Id. At *Page 5 
¶ 10, citing State v. Boshko (2000), 139 Ohio App.3d 827. The term "substantial compliance" means that "under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving." Id., citing State v.Stewart (1977), 51 Ohio St.2d 86; State v. Carter (1979),60 Ohio St.2d 34, certiorari denied (1980), 445 U.S. 953.
 {¶ 10} A defendant, contending that his plea was not knowingly, intelligently, and voluntarily made, must show a prejudicial effect. Id. At ¶ 11, citing Stewart, supra at 93; Crim. R. 52(A). "The test is whether the plea would have otherwise been made." Id., citing State v.Nero (1999), 56 Ohio St.3d 106, 108, citing Stewart, supra;Corbin at 386.
 {¶ 11} The competency standard for entering a plea "is the same as the competency standard for standing trial." See Godinez v. Moran (1993),509 U.S. 389, 391; State v. Mink, 101 Ohio St.3d 350, 2004-Ohio-1064, ¶ 57;State v. Bolin (1998), 128 Ohio App.3d 58; State v. Jenkins, Henry App. No. 06, 2005-Ohio-5616, ¶ 8. To determine whether a defendant is competent to stand trial, a court must determine that defendant "has `sufficient present ability to consult with his lawyers with a reasonable degree of rational understanding' and a `rational as well as a factual understanding of the proceeding against him.'"Jenkins, at ¶ 8, citing Moran at 397, in turn quoting Dusky v.United States (1960), 362 U.S. 402.
 {¶ 12} However, "[a] finding that a defendant is competent to stand trial * * * is not all that is necessary before he may be permitted to plead guilty or waive his right to counsel. In addition to determining that a defendant who seeks to plead guilty or waive counsel is competent, a trial court must satisfy itself whether the waiver of his constitutional rights is knowing and voluntary." Godinez at 400-401. (Citations omitted.) *Page 6 
While, in a sense, "there is a `heightened' standard for pleading guilty and for waiving the right to counsel," such standard "is not a heightened standard of competence." Id. at 401.
 {¶ 13} Morrison points to two separate instances during his change of plea hearing, which he claims show his inability to understand the consequences of his plea. First, Morrison points to the following colloquy:
 COURT: Mr. Morrison, in regard to count one with the specification, the specification being that Willard E. Morrison discharged a firearm at a peace officer or a corrections officer while committing the offense, do you understand that if you enter a no contest plea in regard to the specification, and the Court makes a finding of guilty based upon the facts in the indictment and/or those proffered by the State of Ohio, that the firearm specification included in count one requires an actual seven year term of incarceration in an appropriate state penal institution, and that said period of incarceration is mandatory and must be served prior to any sentence that you would receive for a conviction to the charge or the sentence involved in counts one and/or two. Do you understand that?
 MR. MORRISON: Yes your Honor I understand.
 COURT: Do you have any questions in regard to the mandatory term of incarceration of seven years or the mandatory fact it must be served consecutive to any terms of incarceration imposed in regard to counts one and/or two.
 MR. MORRISON: No your Honor.
 COURT: Now Mr. Morrison I noticed that counsel gave you the answer that no you didn't have any questions. Do you understand this is a personal thing. . .
 MR. MORRISON: Yes.
 COURT: . . .that, that really only you can be the one that says, hey judge I understand what you're saying or judge I don't understand what you're saying.
 *Page 7 
MR. MORRISON: Well, might I speak?
 COURT: Yes sir.
 MR. MORRISON: I don't understand the terms of the legality, but I understand the terms you are giving as the presiding judge that it can go this far, that I understand.
 COURT: Okay. In regard to count one, if you were to receive, and let me try and break this down further, in regard to count one of the indictment, if you were to receive the maximum penalties for a no contest plea and finding of guilt in regard to count one with the gun specification, do you understand that the court could sentence you to seven years incarceration in regard to the gun specification? Do you understand that?
 MR. MORRISON: Yes your Honor I understand.
 COURT: The court could also sentence you to ten years incarceration on the underlying charge of attempted murder in count one. Do you understand that?
 MR. MORRISON: Yes sir your Honor I do.
 COURT: Do you understand if the Court does so, that those terms must be served consecutive, meaning that you would be required to serve the first seven years on the gun specification, and then you would commence or start serving the ten year period on the sentence on the underlying charge of attempted murder. Do you understand that?
 MR. MORRISON: Yes your Honor.
Next, Morrison points to the following colloquy:
 COURT: Mr. Morrison, has your attorney discussed with you the term merger of count one and count two?
 MR. MORRISON: Yes your Honor.
 COURT: By law, and upon the request of your attorney, there is a, the possibility that the sentences in count one and *Page 8 
count two, the attempted murders, should be merged for purposes of sentencing, meaning that they would be combined as one sentence versus that of two separate sentences. That has been discussed with you?
 MR. MORRISON: Yes your Honor.
 COURT: Do you have any questions about merger of sentences in regard to the underlying charges of attempted murder in count one and attempted murder in count two?
 MR. MORRISON: I really don't know what the deal is, but that's the only thing I can say. I don't know what you're actually telling me.
 COURT: Okay. If there was a request for merger of the sentences in count one, the attempted murder and in count two of attempted murder, because the acts are alleged to be relatively close in tie, they could be considered for purposes of sentencing as one act of attempted murder for purposes of sentencing, meaning that the maximum sentences would be merged from that of ten years on count one and ten years on count two to only one ten year term of incarceration as relates to count one and two. Do you understand that?
 MR. MORRISON: That I understood.
 COURT: Okay. You're welcome. Any additional questions in regard to the issue of merger?
 MR. MORRISON: No your Honor.
 {¶ 14} We agree, based on the above colloquies, that Morrison did not initially understand for certain (1) the nature of the mandatory sentence with regard to the gun specification, and (2) the concept of merger. However, after further explanation by the court, Morrison clearly and unequivocally responded that he understood the information explained to him by the court. As such, we find that, under the totality of the circumstances, Morrison subjectively understood the implications of his no contest pleas *Page 9 
and the rights he was waiving. Consequently, we find that Morrison knowingly, intelligently, and voluntarily entered his pleas.
 {¶ 15} Accordingly, we overrule Morrison's first assignment of error.
 III. {¶ 16} In his second assignment of error, Morrison contends that the trial court violated R.C. 2941.25 when it failed to merge his two attempted murder offenses into one conviction for the purposes of sentencing.
 {¶ 17} "The Fifth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution protect a defendant from being put in jeopardy twice for the same offense." State v. Burton, Gallia App. No. 06CA4, 2006-Ohio-4865, ¶ 9: see, also, State v.Rance (1999(, 85 Ohio St.3d 632; State v. Lundy (1987),41 Ohio App.3d 163, 166, citing North Carolina v. Pearce (1969), 395 U.S. 711. "Violation of double jeopardy violates an offender's substantial rights and constitutes plain error." Id. at ¶ 8, citing State v. Collins, Ross App. No. 01CA2950, 2002-Ohio-3212, at ¶ 27; State v. Fischer (1977), 52 Ohio App.2d 53; 2 Baldwin's Ohio Practice, Criminal Law (2003) Section 80:19. R.C. 2941.25 effectuates this prohibition against double jeopardy. Id. at ¶ 9; see, also, Lundy, supra.
 {¶ 18} R.C. 2941.25 provides:
 (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the *Page 10 
indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.
 {¶ 19} R.C. 2941.25 "codified the judicial doctrine of merger,State v. Thomas (1980), 61 Ohio St.2d 254, and prohibited the `cumulative punishment of a defendant for the same criminal act where his conduct can be construed to constitute two statutory offenses, when, in substance and effect, only one offense has been committed.'"State v. Ware (1980), 63 Ohio St.2d 84, 86, citing State v. Roberts
(1980), 62 Ohio St.2d 170.
 {¶ 20} In determining whether merger of offenses is proper, courts must "engage in a two-step analysis." State v. Jones'(1997),78 Ohio St.3d 12, 13, citing State v. Blankenship (1988), 38 Ohio St.3d 116.
 {¶ 21} The first step requires this court to compare the elements of the two attempted murders "in the abstract without considering the evidence in the case, but [we] are not required to find an exact alignment of the elements. Instead, if, in comparing the elements of the offenses in the abstract, the offenses are so similar that the commission of one offense will necessarily result in commission of the other, then the offenses are allied offenses of similar import. (State v. Ranee (1999), 85 Ohio St.3d 632, 710 N.E.2d 699, clarified.)"State v. Cabrales, 118 Ohio St.3d 54, 2008-Ohio-1625, paragraph one of the syllabus.
 {¶ 22} Here, we find that the elements of the two attempted murder offenses correspond to such a degree that the commission of the one attempted murder will result in the commission of the other attempted murder. As such, we proceed to the next step. *Page 11 
 {¶ 23} Under the second step, the court must review the defendant's conduct "to determine whether the defendant can be convicted of both offenses." Jones at 14, citing Blankenship. Only where the multiple offenses "were committed separately or that there was a separate animus for each crime" can the defendant "be convicted of both offenses." Id., citing Blankenship. The Supreme Court of Ohio has "generally not found the presence or absence of any specific factors to be dispositive on the issue of whether crimes were committed separately or with a separate animus." Id. Instead, courts must "analyze the particular facts of each case * * * to determine whether the acts or animus were separate." Id. (Citations omitted.)
 {¶ 24} In State v. Walker (June 30, 2000), Montgomery App. No. 17678, the state charged defendant with two counts of improperly discharging a firearm at or into a habitation. Id. Defendant contended that the court should have merged the counts into one offense. Id. The defendant, after attempting and failing to force his way into a residence, walked into the front yard and fired four shots through a window. Id. This conduct led to the first of the two counts. Id. Next, defendant returned to the car he was driving, reloading on the way. Id. Defendant then "swung the gun up over the roof of that car and fired one shot into the residence * * * then got back inside the vehicle and fired one final shot at that residence through the open passenger window." Id. This conduct led to the second of t he two counts. Id. The Walker court concluded "that these offenses were committed separately and hence the trial court did not commit error in failing to merge them." Id.
 {¶ 25} Here, Sergeant Branham initially stopped Morrison for a traffic violation. Morrison exited his vehicle and fired shots in the direction of Sergeant Branham with an *Page 12 
assault rifle. This conduct resulted in the first count of attempted murder against Morrison, along with the gun specification.
 {¶ 26} Morrison then returned to his vehicle and drove away, leading Sergeant Branham on a chase. While pursuing Morrison, Branham's cruiser broke down and became inoperable. Morrison turned his vehicle around in the roadway, sped back toward Branham's disabled vehicle, crossed the centerline of the roadway, and struck Branham's cruiser head-on at a high rate of speed. This conduct involving the collision resulted in the second count of attempted murder against Morrison.
 {¶ 27} The conduct of Morrison is similar to the conduct of the defendant in Walker. Morrison's separate acts did not occur in rapid succession. In addition, Morrison used a gun to commit the first attempted murder and used his vehicle to commit the second attempted murder. As such, we find that these offenses were committed separately. Consequently, we find that the court did not err when it failed to merge the two counts of attempted murder into one conviction.
 {¶ 28} Accordingly, we overrule Morrison's second assignment of error.
 IV. {¶ 29} In his third assignment of error, Morrison contends that he received ineffective assistance of counsel. He asserts that his trial attorney failed to determine whether he was capable of understanding his plea before he entered it. Further, Morrison claims that his counsel failed to brief the issue of merger of his two attempted murder offenses.
 {¶ 30} "In Ohio, a properly licensed attorney is presumed competent and the appellant bears the burden to establish counsel's ineffectiveness." State v. Wright, *Page 13 
Washington App. No. 00CA39, 2001-Ohio-2473, citing State v. Hamblin
(1988), 37 Ohio St.3d 153, cert. den. (1988), 488 U.S. 975; Vaughn v.Maxwell (1965), 2 Ohio St.2d 299. To secure reversal for the ineffective assistance of counsel, one must show two things: (1) "that counsel's performance was deficient* * *"which "requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment[;]" and (2) "that the deficient performance prejudiced the defense* * *[,]" which "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."Strickland v. Washington (1984), 466 U.S. 668, 687. Absent both showings, "it cannot be said that the conviction * * * resulted from a breakdown in the adversary process that renders the result unreliable." Id.
 {¶ 31} This court "when addressing an ineffective assistance of counsel claim, should not consider what, in hindsight, may have been a more appropriate course of action." Id., citing State v. Phillips
(1995), 74 Ohio St.3d 72. Instead, this court "must be highly deferential." Id., citing Strickland at 689. Further, "a reviewing court: `must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'" Id., citing Strickland at 689.
 {¶ 32} Here, Morrison bases his ineffective assistance of counsel claim on the arguments he made in his first and second assignments of error. However, we did not find error in either assignment of error. Therefore, under the first prong of the Strickland *Page 14 
test, we find that Morrison's trial counsel's performance was not deficient. Consequently, Morrison did not have the ineffective assistance of counsel.
 {¶ 33} Accordingly, we overrule Morrison's third assignment of error.
 V. {¶ 34} In his fourth and final assignment of error, Morrison contends that the trial court erred by applying the Supreme Court of Ohio's decision in State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, decided February 27, 2006, when Morrison's cries were committed on September 5, 2005. Essentially, Morrison asserts that the court violated the Due Process and Ex Post Facto Clauses of our State and Federal Constitutions, citing Miller v. Florida (1987), 482 U.S. 423, when it imposed non-minimum sentences. Morrison acknowledges in his brief that this court has rejected such arguments in the past. See State v.Grimes, Washington App. No. 04CA17, 2006-Ohio-6360.
 {¶ 35} Morrison did not raise his due process and ex post facto arguments in the trial court. Morrison received his sentence afterBlakely v. Washington (2004), 542 U.S. 296, which was decided on June 24, 2004. Thus, he has forfeited all but plain error. State v.Payne, 114 Ohio St.3d 502, 2007-Ohio-4642,]}31 ("we hold that a lack of an objection in the trial court forfeits the Blakely issue for purposes of appeal when the sentencing occurred after the announcement ofBlakely").
 {¶ 36} Pursuant to Crim. R. 52(B), we may notice plain errors or defects affecting substantial rights, although they were not brought to the attention of the court. The Supreme Court of Ohio has found that "[b]y its very terms, the rule places three limitations on a reviewing court's decision to correct an error despite the absence of a timely objection at trial." State v. Barnes (2002), 94 Ohio St.3d 21, 27,2002-Ohio-68. *Page 15 
See Payne, supra. First, an error must exist. Id., citing State v.Hill (2001), 92 Ohio St.3d 191, 200, citing United States v. Olano
(1993), 507 U.S. 725, 732 (interpreting Crim. R. 52[B]'s identical federal counterpart, Fed.R.Crim.P. 52[b]. Second, the error must be plain, obvious, or clear. Id. (Citations omitted). Third, the error must affect "substantial rights," which the court has interpreted to mean that "the trial court's error must have affected the outcome." Id. citing Hill at 205; State v. Moreland (1990), 50 Ohio St.3d 58, 62;State v. Long (1978), 53 Ohio St.2d 91, paragraph two of the syllabus.
 {¶ 37} "The burden of demonstrating plain error is on the party asserting it. (Cite omitted.) A reversal is warranted if the party can prove that the outcome `would have been different absent the error.'" (Cite omitted.) Payne at ¶ 17. A reviewing court should use its discretion under Crim. R. 52(B) to notice plain error "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." Long, supra, at paragraph three of the syllabus.
 {¶ 38} The Foster court considered the constitutionality of Ohio's sentencing statutes in light of the United States Supreme Court's holding in Blakely, supra, and Apprendi v. New Jersey (2000),530 U.S. 466. The Foster court found that, under Blakely and Apprendi, R.C. 2929.14(B), R.C. 2929.14(E)(4) and R.C. 2929.19(B)(2), as well as other sections of the Ohio Revised Code, violated the Sixth Amendment to the extent that they required judicial fact finding. Foster, at paragraphs one through seven of the syllabus. In constructing a remedy, theFoster court exercised the provisions it found to offend the constitution, and then it granted trial court judges full discretion to impose sentences within the ranges prescribed by statute. Id. The court then held that *Page 16 
the cases before the court "and those pending on direct review must be remanded to trial courts for new sentencing hearings not inconsistent" with the court's opinion. Id. at ¶ 104. Consistent with the Supreme Court of the United States' holding in United States v. Booker (2005),543 U.S. 220, the Foster court only applied to its holding retroactively to cases that were then pending on direct review or not yet final.Foster at ¶ 106.
 {¶ 39} As recognized by Morrison, this court has considered and rejected a due process and ex post facto challenge to a sentence imposed in accordance with the Supreme Court of Ohio's holding inFoster. See State v. Grimes, Washington App. No. 04CA17, 2006-Ohio-6360. In Grimes, we agreed with the observations of the Ninth and Second Districts, which rejected such challenges outright. Id. at ¶ 8. In doing so, those courts expressed that it is unlikely that the Supreme Court of Ohio would have directed lower level courts to violate the Constitution; and, in any event, the Supreme Court of Ohio directives bind the district courts of appeal. Id. at ¶ 8, citing State v. Hildreth, Lorain App. No. 06CA8879, 2006-Ohio-5058, at ¶ 10; State v. Durbin, Greene App. No. 2005-CA-134, 2006-Ohio-5125, at ¶¶ 41-42.
 {¶ 40} In finding that the Supreme Court of Ohio's remedy inFoster does not violate the Due Process or Ex Post Facto Clauses of the United States Constitution, we also expressed our approval of the reasoning set forth b the Third District in State v. McGhee, Shelby App. No. 17-06-05, 2006-Ohio-5162. Grimes at ¶ 9, citing with approvalMcGhee at ¶¶ 11, 13-20. Because the range of prison terms for the defendant's offense remained the same both before and afterFoster, we concluded, "it is difficult to understand how appellant could maintain that an enlargement of the criminal statute occurred, generally, or available punishments, in particular." Id. at ¶ 10. *Page 17 
Further, we noted that the appellant did not attempt to explain how he would have acted differently had he known that the Supreme Court of Ohio would strike down parts of R.C. 2929.14. Id. Accordingly, we found that the court did not err in imposing the maximum sentence for the offense. Id. at ¶ 11.
 {¶ 41} Further, this court has found Miller distinguishable. State v.VanHoose, Pike App. No. 07CA765, 2008-Ohio-1122, ¶¶ 25-26; State v.Hardesty, Pickaway App. No. 07CA2, 2007-Ohio-3889. The Foster court "did not increase the presumptive maximum sentence when it served R.C. 2929.14(B) in its entirely." Id. at ¶ 26. The presumptive maximum and minimum terms of imprisonment before and after Foster are the same, as is Morrison's right to "appeal any sentence contrary to law." Id. Further, although Morrison "claims entitlement to a minimum sentence," this court has found that:
 "[t]he law before Foster never mandated imposition of minimum sentences on offenders who had not previously served a prison term, as appellant asks us to do here. By demanding application of a presumption in favor of a minimum sentence, but not allowing any means by which the presumption can be overcome, `appellant essentially seeks the benefit of a state of law that never existed.'"
Id., citing Hardesty, supra, ¶ 12 (cites omitted).
 {¶ 42} Based upon our holdings in Grimes, the numerous decisions following both Grimes and VanHoose, we find that the trial court did not err in applying the Supreme Court of Ohio's Foster decision to Morrison's offenses. Therefore, we do not find any error, let alone plain error.
 {¶ 43} Accordingly, we overrule Morrison's fourth assignment of error and affirm the judgment of the trial court. *Page 18 
 JUDGMENT AFFIRMED. *Page 19 
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED, and Appellant shall pay the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Adams County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
 Abele, P.J. and McFarland, J.: Concur in Judgment and Opinion. *Page 1