[Cite as *State v. Marcum*, 2013-Ohio-2447.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HOCKING COUNTY

| | |
|---|---|
| STATE OF OHIO, | : |
| | : Case Nos. 12CA20 |
| Plaintiff-Appellee, | :         12CA24 |
| | :         12CA25 |
| vs. | : |
| | : <u>DECISION AND JUDGMENT</u> |
| JAMES MARCUM | : <u>ENTRY</u> |
| | : |
| Defendant-Appellant. | : **Released: 06/04/13** |

_____

<u>APPEARANCES:</u>

Timothy P. Gleeson, Logan, Ohio, for Appellant.

Laina Fetherolf, Hocking County Prosecuting Attorney, and Jonah M. Saving, Hocking County Assistant Prosecuting Attorney, Logan, Ohio, for Appellee.

_____

McFarland, P.J.

{¶1} In this consolidated appeal, James Marcum, (hereinafter "Appellant"), appeals his convictions for two charges of domestic violence, two charges of violating protection orders, one charge of criminal damaging, and one charge of obstructing official business in the Hocking County Municipal Court after he pled guilty to the above charges pursuant to a plea arrangement with the State of Ohio. Appellant's counsel has advised this Court that, after reviewing the record, he cannot find a meritorious claim for appeal. As a result, Appellant's counsel has moved to withdraw under

*Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396 (1967). We find no merit to Appellant's three assignments of error and, after independently reviewing the record, find no additional error prejudicial to the Appellant's rights in the trial court proceedings. The motion of counsel for Appellant requesting to withdraw as counsel is granted, and this consolidated appeal is dismissed for the reason that it is wholly frivolous.

FACTS

{¶2} On December 21, 2011, Appellant's wife, Patricia Marcum, (hereinafter "Patricia") placed a call to the Hocking County Sheriff's Office reporting a domestic dispute. When officers arrived at the scene, Appellant was gone. Patricia advised officers Appellant had been drinking and they argued. She further advised Appellant had punched her head and threatened to kill her. Appellant was subsequently charged with domestic violence, R.C. 2919.29(A) and assault, R.C. 2903.13(A), both misdemeanors of the first degree.

{¶3} The cases were filed as Hocking Municipal Court case number CRB 1101101(A) and (B). A domestic violence criminal temporary protection order (DVTPO) was served on Appellant on December 30, 2011. Patricia was named as the protected person. The order advised Appellant

was not to be present within 500 feet of Patricia, even with her permission. Appellant was appointed counsel and the trial court proceedings ensued.

{¶4} On March 4, 2012, Appellant allegedly punched Aidan Newton, Patricia's son (and Appellant's step-son), and threw a brick through Patricia's window.  He also allegedly threatened to kill Patricia.  As a result, Appellant was again charged with domestic violence and assault.  In addition, he was charged with violation of a temporary protection order, a violation of R.C. 2919.27 and a misdemeanor of the first degree; criminal damaging, R.C. 2909.06 and a misdemeanor of the second degree; and menacing, R.C. 2903.22 and a misdemeanor of the fourth degree. These cases were filed together as Hocking County Municipal Court numbers CRB 1200157 (A) through (E).

{¶5} On May 8, 2012, Appellant was again charged with violation of a temporary protection order after having been seen at Patricia's residence. He was also charged with obstruction of justice, R.C. 2921.31(A), a misdemeanor of the second degree, after he fled from police.  These cases were grouped as Hocking County Municipal Court numbers CRB1200393(A) and (B).

{¶6} On June 4, 2012, Appellant's counsel moved for a psychiatric evaluation of Appellant.  The trial court granted the motion.  On July 9,

2012, based on the forensic examiner's report, the trial court found by a preponderance of the evidence that [Appellant's] mental condition rendered him unable to understand the nature of the proceeding and assist in his defense. Appellant was committed to the Ohio Department of Mental Health for 60 days. On August 13, 2012, another mental health evaluation indicated Appellant was restored to competency. Appellant was then scheduled for a hearing on August 17, 2012 to determine whether his competency had indeed been restored.

{¶7} At the August 17th hearing, the parties entered into plea negotiations. Appellant entered guilty pleas to the following six charges:

1) Domestic violence, CRB 11011101(A)- appellate case number 12CA20;

2) Domestic violence, CRB 1200157 (A)- appellate case number 12CA24;

3) Violating protection order, CRB1200157(B)- appellate case number 12CA24;

4) Criminal damaging, CRB1200157, appellate case number 12CA24;

5) Violating protection order,CRB1200393(A)- appellate case number 12CA25; and,

6) Obstructing official business, CRB 1200393(B)- appellate case number 12CA25.

{¶8} The State dismissed all five remaining charges. Prior to accepting Appellant's guilty pleas, the trial court reviewed the charges and notified Appellant of the maximum jail terms and maximum fines. The trial court also reviewed Appellant's constitutional rights to trial, trial by jury, confrontation of witnesses, and subpoena power.

{¶9} Appellant was sentenced the same day. The trial court heard recommendations from the State regarding the jail sentence to be served and conditions of probation. Patricia and Appellant were given opportunities to address the court. Both verbalized their opposition to the temporary protection orders.[1] The trial court ultimately imposed a 180-day jail sentence with credit for time served, various fines and costs, and a community control sanction of two years. The trial court also ordered "no contact" between Appellant and Patricia during the period of community control.

{¶10} Appellant now appeals the convictions and sentencing order. This appeal is timely filed. We have allowed Appellant sufficient time to respond to counsel's brief. To date, no response has been received.

---

[1] The record contains, during the course of the proceedings, several written requests made by Patricia Marcum and directed to the trial court, that the charges be dismissed and the protection orders be lifted.

ANDERS BRIEF

{¶11} Under *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396 (1967), counsel may ask permission to withdraw from a case when counsel has conscientiously examined the record, can discern no meritorious claims for appeal, and has determined the case to be wholly frivolous. *Id.* at 744; *State v. Adkins,* 4th Dist. No. 03CA27, 2004-Ohio-3627, ¶8. Counsel's request to withdraw must be accompanied with a brief identifying anything in the record that could arguably support the client's appeal. *Anders* at 744; *Adkins* at ¶8. Further, counsel must provide the defendant with a copy of the brief and allow sufficient time for the defendant to raise any other issues, if the defendant chooses to. *Id.*

{¶12} Once counsel has satisfied these requirements, the appellate court must conduct a full examination of the trial court proceedings to determine if meritorious issues exist. If the appellate court determines that the appeal is frivolous, it may grant counsel's request to withdraw and address the merits of the case without affording the appellant the assistance of counsel. *Id.* If, however, the court finds the existence of meritorious issues, it must afford the appellant assistance of counsel before deciding the merits of the case. *Anders* at 744; *State v. Duran,* 4th Dist. No. 06CA2919, 2007-Ohio-2743, ¶7.

**{¶13}** In the current action, Appellant's counsel advises that the appeal is wholly frivolous and has asked permission to withdraw. Pursuant to *Anders,* counsel has filed a brief raising three potential assignments of error for this Court's review.

POTENTIAL ASSIGNMENT OF ERROR ONE

I.      THE TRIAL COURT ERRED IN FINDING THAT DEFENDANT-APPELLANT'S GUILTY PLEAS WERE ENTERED KNOWINGLY, VOLUNTARILY, AND INTELLIGENTLY.

STANDARD OF REVIEW

**{¶14}** In deciding whether to accept a guilty plea, the trial court must determine whether the plea was made knowingly, intelligently, and voluntarily. *State v. McDaniel,* 4th Dist. No. 09CA677, 2010 Ohio-5215, ¶ 8. "'In considering whether a guilty plea was entered knowingly, intelligently and voluntarily, an appellate court examines the totality of the circumstances through a de novo review of the record to ensure that the trial court complied with constitutional and procedural safeguards.'" (Emphasis sic.) *Id.*, quoting *State v. Eckler,* 4th Dist. No. 09CA878, 2009-Ohio-7064, ¶ 48. See, also, *State v. Barner,* 4th Dist. No. 10CA9, 2012-Ohio- 4584.

**{¶15}** "Before accepting a guilty plea, the trial court should engage in dialogue with the defendant as described in Crim.R.11(C)." *McDaniel* at ¶ 8, citing *State v. Morrison,* 4th Dist. No. 07CA854, 2008-Ohio-4913, ¶ 9.

The trial court must also inform the defendant hat he or she is waiving the privilege against self-incrimination, the right to a jury trial, the right to confront accusers, and the right to compulsory process. *State v. Jordan,* 4th Dist. No. 00CA16, 2001-Ohio-2608, 2001 WL 1346129, citing *Boykin v. Alabama,* 395 U.S. 238, 89 S. Ct. 1709 (1969); *State v. Ballard,* 66 Ohio St. 2d 473, 423 N.E.2d 115 (1981). Because these are constitutional rights, the record must affirmatively demonstrate that the waiver was both intelligent and voluntary. *Boykin, supra.* An appellant who challenges his plea on the basis that it was not knowingly and voluntarily made must show a prejudicial effect. *State v. Nero,* 56 Ohio St. 3d 106, 564 N.E.2d 474 (1990), citing *State v. Stewart,* 51 Ohio St. 2d 86, 94, 364 N.E.2d 1163 (1977); Crim.R. 52(A). The test is whether the plea would have otherwise been made. *Stewart, supra* at 3.

## LEGAL ANALYSIS

{¶16} In Appellant's first assignment of error, he contends the trial court erred in finding his guilty pleas were entered knowingly, voluntarily, and intelligently. However, the record shows prior to accepting Appellant's pleas, the trial court reviewed the charges and notified Appellant of the maximum jail sentences and the maximum fines. Appellant verbalized understanding of these possible sentences and fines. The trial court also

engaged in brief dialogue with Appellant concerning his right to trial.

Appellant also verbalized his understanding of this right.  The trial court

then asked Appellant if he had reviewed the documents associated with each

case with his attorney.  Appellant responded in the affirmative.  The court

then inquired:

> "And do you understand that by signing these documents you are giving up that right to have a trial and all rights associated with going to trial?"

> Appellant again responded affirmatively.   The trial court further

inquired:

> "You understand that you are giving up your right to call witnesses to testify on your behalf and to confront any witness called to testify against you by the state?"

> Appellant again responded affirmatively.  The trial court again

inquired as to whether Appellant fully understood his legal rights.  Appellant

again answered "Yes."

{¶17} Although the trial court did not verbally advise Appellant of his

privilege against compulsory self-incrimination,  the record contains

Appellant's signed waiver of all constitutional rights attendant to trial.

Appellant stated on the record he understood the penalties and charges.  At

no time did Appellant indicate he did not understand the charges, the

penalties, or his constitutional rights.

{¶18} Further, this was a plea arrangement.  Appellant pled to six charges and in return, five charges were dismissed.  He signed a written plea agreement and a waiver of rights form.  The plea agreement set forth the terms of the plea arrangement and listed the sanctions.  The no-contact order was included on the written plea arrangement. Appellant was well-aware of the terms of the plea arrangement.   Further, Appellant's actions in being charged multiple times with domestic violence and violation of protection orders after the first domestic incident in March 2011 demonstrate he blatantly ignored court orders and conditions of bond.[2] Nevertheless, five charges were dismissed.  Appellant received substantial benefit from his bargain.

{¶19} Finally, Appellant makes no showing of prejudice or that he would not have accepted the plea. Again, the no-contact order was specified on the written plea agreement which Appellant reviewed with counsel and signed. There is nothing in the record to suggest Appellant's plea was not knowing, voluntary, and intelligent, under the totality of the circumstances. We find the trial court did not err or abuse its discretion in accepting Appellant's guilty pleas.  As such, the first potential assignment of error is

---

[2] Appellee's brief references the fact that for several weeks prior to May 8, 2012 (the day Appellant's actions gave rise to the third set of charges being filed), Appellant was subject to a statewide warrant for leaving the Salvation Army in Columbus, Ohio after having his bond, relevant to the pending domestic charges, modified to attend a program at the Salvation Army.

overruled.

## POTENTIAL ASSIGNMENT OF ERROR TWO

II.    TRIAL COUNSEL FOR DEFENDANT-APPELLANT PROVIDED
       INEFFECTIVE ASSISTANCE OF COUNSEL BECAUSE HE
       FORCED DEFENDANT-APPELLANT INTO ENTERING THE
       GUILTY PLEAS.

## STANDARD OF REVIEW

{¶20} Criminal defendants have the right to effective assistance of

counsel. *State v. Adkins*, 161 Ohio App. 3d 114, 2005-Ohio-2577, 829

N.E.2d 729 (4th Dist.); *McMann v. Richardson*, 397 U.S. 759, 770, 90 S.Ct.

1441 (1970); *State v. Lytle,* 4th Dist. No. 96CA182, 1997 WL 118069 (Mar.

10, 1997); *State v. Doles,* 4th Dist. No 1660, 1991 WL 179582 (Sept. 18,

1991). "In Ohio, a properly licensed attorney is presumed competent and

the appellant bears the burden to establish counsel's ineffectiveness." *State*

*v. Knowlton,* 971 N.E.2d 395, 2012-Ohio-2350, (4th Dist.) ¶ 35. To obtain

reversal of a conviction on grounds of ineffective assistance of counsel, a

defendant must show that (1) his counsel's performance was deficient and

(2) the deficient performance prejudiced the defense so as to deprive him of

a fair trial. See *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct.

2052 (1984); see, also, *State v. Issa*, 93 Ohio St. 3d 49, 67, 752 N.E.2d 904

(2001); *State v. Goff*, 82 Ohio St. 3d 123, 694 N.E.2d 916 (1998). We note

that both prongs of the *Strickland* test need not be analyzed if the claim can

be resolved under only one.  See *State v. Madrigal,* 87 Ohio St. 3d 378, 389, 2000-Ohio-448, 721 N.E.2d 52.  If a claim may be resolved on grounds of lack of prejudice, that course should be followed.  See *State v. Loza,* 71 Ohio St. 3d 61, 641 N.E.2d 1082 (1994).

## LEGAL ANALYSIS

{¶21} In his second assignment of error, Appellant contends his attorney rendered ineffective assistance of counsel by "forcing" Appellant into entering the guilty pleas.  He supports this contention by referencing only the fact that trial counsel requested a recess.  There is no evidence in the record to suggest the recess was used by counsel to coerce Appellant into entering the guilty pleas. Appellant made no complaint or objection about his attorney after court resumed following the recess.  Appellant's argument is based on private communication between Appellant and his attorney, i.e., depending on alleged evidence outside of the record.  The proper vehicle for Appellant to raise this argument is in a petition for post-conviction relief under R.C. 2953.21.  See *State v. Ables,* 4th Dist. No. 11CA22, 2012-Ohio-3377, ¶ 12; *State v. Whitaker,* 4th Dist. No. CA3349, 2011-Ohio-6923, ¶ 11, citing *State v. Cooperrider*, 4 Ohio St. 3d 226, 228, 448 N.E.2d 452 (1983)(per curiam).  Accordingly, this issue is not properly before us on

appeal.  We therefore reject and overrule this second potential assignment of error.

## POTENTIAL ASSIGMENT OF ERROR THREE

III.    THE TRIAL COURT ERRED BY IMPOSING A NO-CONTACT
        ORDER PROHIBITING DEFENDANT-APPELLANT FROM
        HAVING CONTACT WITH HIS WIFE AS A COMMUNITY
        CONTROL SANCTION.

## STANDARD OF REVIEW

{¶22} We review a misdemeanor sentence for an abuse of discretion. *State v. Knowlton,* 971 N.E.2d 395, 2012-Ohio-2350, (4th Dist.) ¶ 28; R.C. 2922.22(A); *State v. Leeth,* 4th Dist. No. 05CA745, 2006-Ohio-3575, ¶ 6. See, e.g., *City of Youngstown v. McElroy,* 7th Dist. No. 05MA13, 2005-Ohio-6595.  An abuse of discretion implies that a court's ruling is unreasonable, arbitrary, or unconscionable; it is more than an error in judgment.  *Leeth, supra,* citing *State ex rel. Richard v. Seidner,* 76 Ohio St. 3d 14, 666 N.E.2d 1134 (1996).

## LEGAL ANALYSIS

{¶23} The overriding purposes of misdemeanor sentencing are to protect the public from future crime by the offender and others and to punish the offender.  R.C. 2929.21(A).  To achieve those purposes the sentencing court shall consider the impact of the offense upon the victim and the need

for changing the offender's behavior, rehabilitating the offender, and making restitution to the victim for the offense, the public, or the victim and the public. *Id*. R.C. 2929.21(B) further provides that a sentence imposed for a misdemeanor shall be reasonably calculated to achieve the two overriding purposes of misdemeanor sentencing and consistent with sentences imposed for similar offenses committed by similar offenders.

{¶24} Trial courts are given broad discretion in their sentencing authority when it comes to conditions of probation. *Garfield Hts. v. Tvergyak,* 8th Dist. No. 84825, 2005-Ohio-2445, ¶ 5. The sentencing court can impose additional conditions aimed at preserving the interests of justice, protection of the community, and the rehabilitation of the offender. *Id.*; R.C. 2929.25(B). To determine whether a condition of probation as part of sentencing is appropriate and valid, the Supreme Court of Ohio has held, when deciding probation conditions, "[C]ourts should consider whether the condition (1) is reasonably related to rehabilitating the offender, (2) has some relationship to the crime of which the offender was convicted, and (3) relates to the conduct which is criminal or reasonably related to future criminality and serves the statutory ends of probation." *State v. Jones,* 49 Ohio St. 3d 51, 52, 550 N.E. 2d 469 (1990). The Court further explained in *State v. Talty*, 103 Ohio St. 3d 177, 181, 2004-Ohio- 4888, 814 N.E.2d 1201,

"*Jones* stands for the proposition that probation conditions must be reasonably related to the statutory ends of probation and must not be overly broad.  Because community control is the functional equivalent of probation, this proposition applies with equal force to community control sanctions." *State v. Lane,* 2nd Dist. No. 2010 CA21, 2010-Ohio-5639, Fn 1. "The community control statute, despite changing to the manner in which probation was administered, did not change the underlying goals of rehabilitation, administering justice, and ensuring good behavior…." *Id.*[3]

{¶25} In his third assignment of error, Appellant contends the trial court erred in imposing a "no-contact" order between Appellant and his wife as a community control sanction. Appellant directs us to his wife's statement to the court that she did not want a protection order at the August 17, 2012 hearing.  On that date, Patricia advised the trial court she did not believe her physical safety was threatened and she reiterated her previous statements that the protection orders created a hardship.

{¶26} The State of Ohio also points out generally, where a no contact order between spouses has been upheld as a condition of community control, the marital relationship was abusive and the defendant was convicted of

---

[3] The *Lane* opinion noted "[T]he precise holding of *Jones* and its effect on probation and community-control conditions has been questioned with regards to sentencing because it predates Am. Sub. S.B. No. 2 (1995). *Lane,* supra, Fn1.  However, the *Lane* court also acknowledged "[W]ith the passage of Am. Sub. S.B. No. 2 in 1995, community control replaced probation as a possible sentence under Ohio's felony sentencing law." *Id.* (Citations omitted).

domestic violence. *State v. Marcum,* 4th Dist. Nos. 11CA8 and 11CA10, 2012-Ohio- 572, ¶ 11. See, also, *City of Garfield Heights v. Tvergyak,* 8th Dist. No. 84825, 2005-Ohio-2445; *State v. Brillhart,* 129 Ohio App.3d 180, 717 N.E.2d 413 (1998); *State v. Conkle*, 129 Ohio App.3d 177, 717 N.E.2d 411 (1998). See also *State v. Harford,* 5th Dist. No. 00CA89, 2001 WL 227704, (Mar. 6, 2001); *City of University Heights v. Roders,* 8th Dist. No. 76252, 1999 WL 632922 (Aug. 19, 1999).

**{¶27}** The State of Ohio argues here, Appellant's no contact order is reasonably related to rehabilitating the offender, and we agree. The State cites *Tvergyak, supra,* a case in which Tvergyak entered a "no contest" plea and was found guilty of misdemeanor domestic violence after an altercation between Tvergyak and his wife which occurred subsequent to a night of drinking. Upon sentencing, Tvergyak was given a jail sentence, fine, and community service. He was also ordered to have no contact with his wife during five years of active probation. In affirming the trial court's sentence, the *Tyergyak* court held:

> "The trial court is in the best position to evaluate the circumstances and sentence the defendant accordingly. In this case, the facts are such that the trial court's sentence and conditions of probation clearly pass the three-prong test as applied in Jones, supra. The no-contact order as a condition of Tvergyak's probation clearly bears a relationship to the crime at issue, is related to rehabilitating the defendant, and is fashioned as such to prevent future instances of domestic violence."

{¶28} Here, Appellant was convicted of two acts of domestic violence involving his wife as victim. He was also convicted of two charges of violating a temporary protection order. Appellant has a violent history of actions and threats. We agree with the State's observation that in this case, rehabilitation cannot happen without court intervention. There is an absolute need to separate the parties until, at least, Appellant can demonstrate he has modified and corrected his way of interacting with his wife.

{¶29} Here, the trial court imposed the no- contact order for a period of two years. In addition to the no -contact order, Appellant was ordered to participate in mental health programs and abstain from using drugs and alcohol. The trial court's order also stated the no-contact aspect of the order could be modified in the future as circumstances change. In our opinion, the order is not overbroad and reasonably relates to the statutory ends of probation, pursuant to *Jones.*

{¶30} In *State v. Marcum, supra,* we reversed the trial court's judgment in Patricia Marcum's appeal of her sentence upon conviction for obstructing official business and misuse of 911. There, Mrs. Marcum argued the trial court abused its discretion when it imposed a no- contact order between the Marcums as a condition of her community control. Under the above-cited *Jones* test, we reasoned that the condition was not

reasonably related to rehabilitating Mrs. Marcum because it did nothing to ensure that she uses 911 only for legitimate purposes or that she does not obstruct official business. We also reasoned that the order did not reasonably relate to future criminality. Here, the convictions in Appellant's case are for domestic violence and violations of a protection order. Thus, the no-contact order has a relationship to the crimes committed and otherwise fits all prongs of the *Jones* test.

**{¶31}** We believe, as did the appellate court in *Tvergyak,* that the no-contact order as a condition of probation clearly bears a relationship to the crime at issue, is related to rehabilitating the defendant, and is fashioned to prevent future crimes of domestic violence. We also believe Appellant's sentence is consistent with sentences imposed for similar offenses committed by similar offenders. The no- contact order is not overbroad and is consistent with the purposes of misdemeanor sentencing. As such, we find the trial court did not err and abuse its discretion in fashioning the no-contact order as a condition of probation. We therefore, overrule Appellant's third potential assignment of error.

CONCLUSION

**{¶32}** In the case sub judice, the trial court's findings are supported by the record. As such, we also conclude that the potential assignments of error

advanced by appellate counsel are wholly without merit. The motion of

counsel for Appellant requesting to withdraw as counsel is granted.  This

appeal is dismissed for the reason that it is wholly frivolous.

**APPEAL DISMISSED.**

**JUDGMENT ENTRY**

It is ordered that the APPEAL IS DISMISSED and that Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Hocking County Municipal Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.

Hoover, J.: Concurs in Judgment and Opinion.
Harsha, J.: Concurs in Judgment Only.


For the Court,


BY: _____
Matthew W. McFarland
Presiding Judge


**NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**