[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Brinkman*, Slip Opinion No. 2021-Ohio-2473.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2021-OHIO-2473

THE STATE OF OHIO, APPELLEE, *v*. BRINKMAN, APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Brinkman*, Slip Opinion No. 2021-Ohio-2473.]**

*Criminal law—Aggravated murder—Crim.R. 11(C)(2)(c)—Trial court did not advise capital defendant at time guilty plea was entered that by pleading guilty, defendant was waiving rights to confront witnesses against him and to have guilt proved beyond a reasonable doubt—Because trial court accepted defendant's guilty plea without first strictly complying with Crim.R. 11(C)(2)(c), the plea is invalid—Convictions and sentences vacated and cause remanded to the trial court for new proceedings.*

(No. 2019-0303—Submitted March 4, 2021—Decided July 21, 2021.)

APPEAL from the Court of Common Pleas of Cuyahoga County,

No. CR-17-618342-A.

_____

**O'CONNOR, C.J.**

{¶ 1} Appellant, George C. Brinkman, was charged in the Cuyahoga County Common Pleas Court with counts of aggravated murder with capital

specifications, aggravated burglary, kidnapping, and abuse of a corpse regarding the murder of a woman and her two daughters. Brinkman pleaded guilty to all the charges and specifications, and a three-judge panel sentenced him to death. Because the trial court accepted his guilty plea without first strictly complying with Crim.R. 11(C)(2)(c), we conclude that Brinkman's guilty plea is invalid. We therefore vacate Brinkman's convictions and sentences and remand the cause to the trial court for new proceedings.

## I. Relevant Background

{¶ 2} Brinkman initially pleaded not guilty to all the charges and specifications. However, during a pretrial hearing, Brinkman informed the trial court that he wanted to change his plea to guilty.

### A. *The first plea colloquy*

{¶ 3} The trial court held a plea hearing on November 5, 2018, during which the following colloquy between Brinkman and the court took place:

> The Court: Are you satisfied with the representation you have received from your attorneys?
>
> The Defendant: Yes.
>
> The Court: Do you understand that by entering pleas of guilty you will be giving up certain constitutional rights?
>
> The Defendant: Yes, sir.
>
> The Court: All right. I am going to go through your rights with you, sir, and ask you if you understand each one. When I ask you if you do understand, answer yes out loud. If you don't understand, say no, or feel free at any point to interrupt me and I'll explain it to you.

First of all, sir, do you understand you have a right to an attorney? If you cannot afford an attorney, one will be appointed to represent you at no cost to yourself.

The Defendant: Yes.

The Court: Do you understand you have a right to a trial by a jury or to a judge?

The Defendant: Yes.

The Court: Do you understand you have a right to use the Court's power of compulsory process through a subpoena to compel witnesses to come to court and testify on your behalf?

The Defendant: Yes.

The Court: Do you also understand you have a right to remain silent and not testify and no one could hold it against you that you did not testify, nor could anyone make a comment about your silence to the jury?

The Defendant: Yes.

{¶ 4} The trial court then read aloud each offense to which Brinkman was entering a plea of guilty and the possible sentences for each offense. Brinkman entered a plea of guilty to each offense, after which the trial court stated:

All right. At this point, the record should reflect that the Court does accept the pleas, finds that they are knowingly and voluntarily, with a full understanding of [Brinkman's] rights, entered at this point.

* * *

If the record is unclear, we've accepted the plea, haven't entered any judgment at this point. We need to have the hearing.

**{¶ 5}** Because Brinkman had pleaded guilty to aggravated murder with death specifications, the case proceeded to a hearing before a three-judge panel pursuant to R.C. 2945.06 and Crim.R. 11(C)(3). From November 5 to 7, the state presented its case in chief, calling numerous witnesses and presenting exhibits to the panel. The state rested its case, subject to the admission of its exhibits, on November 7.

### B. The second plea colloquy

**{¶ 6}** Two days later, on November 9, the trial court noted on the record that it had reviewed a transcript of the plea colloquy and "noticed that there were some omissions that were not thoroughly covered." The court then informed Brinkman that it must ask him "a couple of questions like we did on Monday," after which the following colloquy occurred:

The Court: First of all, you understand that by your guilty plea you're giving up your constitutional rights with respect to a trial? Do you understand that?

The Defendant: Yes, sir.

The Court: And that includes a trial by jury or to the judge. Do you understand this?

The Defendant: Yes sir.

The Court: And you're giving up your right to that jury trial in which 12 jurors must unanimously find the evidence true beyond a reasonable doubt. Do you understand that?

The Defendant: Yes sir.

The Court: And that you have a right to use this Court's power of compulsory process through a subpoena to compel

witnesses to come to court and testify in your behalf. Do you understand that?

The Defendant: Yes sir.

The Court: Do you also understand you have a right to have the State, through its prosecuting attorney, prove your guilt by evidence beyond a reasonable doubt, and your attorneys would have the opportunity to confront and cross-examine each and every witness the State would bring forward? Do you understand you're giving that up?

The Defendant: Yes, sir.

The Court: Do you also understand you have a right to remain silent and not testify and no one could hold it against you that you did not testify, nor make any comment about it to the jury that you did not testify? Do you understand that?

The Defendant: Yes, sir.

The Court: And I think we very thoroughly went over all the offenses, and you did indicate you understood those and the possible consequences of this guilty plea.

Do you have any questions about any of these things we've talked about?

The Defendant: No, sir.

The Court: All right. And so hopefully that will—anything else, [Assistant Prosecutor]?

[Assistant Prosecutor]: I think we missed the right to confront witnesses, Your Honor.

The Court: Okay. I'll say—I think I said that, but I'll—I'll make sure. I'll say it again.

That you do have a right to have the State, through its prosecuting attorney, prove your guilt by evidence beyond a reasonable doubt, and your attorneys would have the opportunity to confront and cross-examine each and every witness the State would bring forward?

The Defendant: Yes, sir.

The Court: And you are presumed innocent until, in fact, the State proves you otherwise?

The Defendant: Yes, sir.

The Court: Okay. Is that satisfactory to everyone?

[Defense Counsel]: Yes, Your Honor.

[Assistant Prosecutor]: Yes, Your Honor.

[Second Defense Counsel]: Yes, Your Honor.

**{¶ 7}** Following this second colloquy, the three-judge panel ruled on the admissibility of the state's exhibits, heard the state's closing arguments, and entered findings of guilt on all the counts and specifications. At no point did the trial court ask Brinkman to reenter his guilty plea. The court sentenced Brinkman to death for each of the three capital offenses and a consecutive, aggregate prison term of 47 years for the noncapital offenses.

**{¶ 8}** Brinkman appealed his convictions and sentences to this court as of right, presenting 13 propositions of law.

## II. Analysis

**{¶ 9}** In proposition of law No. II, Brinkman argues that the trial court failed to comply with Crim.R. 11(C)(2)(c) prior to accepting his plea, thereby rendering his guilty plea invalid. More specifically, Brinkman contends that the trial court did not advise him at the time that he entered his plea and the court accepted it, that

by pleading guilty he was waiving his constitutional rights to confront the witnesses against him and to have the state prove his guilt beyond a reasonable doubt.

### A. A trial court must strictly comply with Crim.R. 11(C)(2)(c)

{¶ 10} A criminal defendant's choice to enter a plea of guilty is a serious decision. *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 25. "Due process requires that a defendant's plea be made knowingly, intelligently, and voluntarily; otherwise, the defendant's plea is invalid." *State v. Bishop*, 156 Ohio St.3d 156, 2018-Ohio-5132, 124 N.E.3d 766, ¶ 10 (lead opinion), citing *Clark* at ¶ 25.

{¶ 11} Crim.R. 11(C)(2) governs the process that a trial court must follow before accepting a plea of guilty to a felony charge. *Bishop* at ¶ 11 (lead opinion). Most relevant here, Crim.R. 11(C)(2)(c) requires the court to notify the defendant that he has certain constitutional rights and to determine whether he understands that by pleading guilty, he is waiving those rights. The court may not accept a guilty plea without first doing the following:

> Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

*Id.* Crim.R. 11(C)(2)(c) requires the court to communicate this information so that the defendant can make an intelligent and voluntary decision whether to plead guilty. *State v. Miller*, 159 Ohio St.3d 447, 2020-Ohio-1420, 151 N.E.3d 617, ¶ 18, citing *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 18.

**{¶ 12}** In *Veney*, the trial court did not advise the defendant that by entering a guilty plea, he would waive his constitutional right to have the state prove his guilt beyond a reasonable doubt at trial. *Id*. at ¶ 3-4, 30. We held that a trial court is required to strictly comply with Crim.R. 11(C)(2)(c) and that its failure to do so invalidates the plea. *Veney* at ¶ 32. We explained that "[a]lthough the trial court may vary slightly from the literal wording of the rule in the colloquy, the court cannot simply rely on other sources to convey these rights to the defendant." *Id*. at ¶ 29. Because the record in that case showed that the trial court had "plainly failed to orally inform [the defendant] of his constitutional right to require the state to prove his guilt beyond a reasonable doubt," the plea was invalid. *Id.* at ¶ 30. We recently reaffirmed that a trial court must strictly comply with Crim.R. 11(C)(2)(c) before accepting a defendant's guilty plea and that its failure to notify the defendant of his constitutional rights under that rule "amounts to plain error," *Miller* at ¶ 13, that "cannot be deemed harmless," *id.* at ¶ 16.

*B. The trial court did not strictly comply with Crim.R. 11(C)(2)(c)*

**{¶ 13}** The state concedes the fact that during the first plea colloquy on November 5, 2018, the trial court did not advise Brinkman of his rights to confront the witnesses against him and to have the state prove his guilt beyond a reasonable doubt. Nevertheless, it asserts that the trial court complied with Crim.R. 11(C)(2)(c) because, in its view, the court did not accept Brinkman's guilty plea until *after* it had conducted the second colloquy, during which the court advised Brinkman of the constitutional rights that it had failed to inform him of during the first colloquy.

**{¶ 14}** First and foremost, the record does not support what the state suggests. After the first colloquy on November 5, the trial court explicitly stated, "At this point, the record should reflect that the Court does accept the pleas, finds that they are knowingly and voluntarily, with a full understanding of [Brinkman's] rights, entered at this point. * * * [W]e've accepted the plea, haven't entered any

judgment at this point." Thus, the record reflects that the trial court indeed accepted Brinkman's guilty plea after the flawed first colloquy and before the second colloquy.

{¶ 15} Moreover, R.C. 2945.06, which addresses guilty pleas in capital cases, does not support the state's contention that the trial court accepted Brinkman's guilty plea only after the second colloquy on November 9. That statute provides, "*If the accused pleads guilty of aggravated murder*, a court composed of three judges shall examine the witnesses, determine whether the accused is guilty of aggravated murder or any other offense, and pronounce sentence accordingly." (Emphasis added.) Nothing within R.C. 2945.06 indicates that a guilty plea is not accepted until after the three-judge panel enters its findings of guilt. Rather, R.C. 2945.06 contemplates that a trial court's acceptance of a guilty plea precedes the presentation of evidence. Crim.R. 11(C)(3)(c) similarly bolsters this conclusion, stating, "If the indictment contains one or more specifications that are not dismissed *upon acceptance* of a plea of guilty * * *, or if pleas of guilty * * * to both the charge and one or more specifications *are accepted*," then the three-judge panel must, "if the offense is determined to have been aggravated murder, proceed as provided by law to determine the presence or absence of the specified aggravating circumstances and of mitigating circumstances, and impose sentence accordingly." (Emphasis added.) *See State v. Post*, 32 Ohio St.3d 380, 392-393, 513 N.E.2d 754 (1987) (explaining that "Crim.R. 11(C)(3)(c), when read in pari materia with R.C. 2945.06, requires the three-judge panel, *upon acceptance* of a no contest plea to the charge of aggravated murder, to hear evidence in deciding whether the accused is guilty of aggravated murder beyond a reasonable doubt [emphasis added]"), *overruled in part on other grounds*, *State v. McDermott*, 72 Ohio St.3d 570, 574, 651 N.E.2d 985 (1995); *see also State v. Green*, 81 Ohio St.3d 100, 104, 689 N.E.2d 556 (1998).

{¶ 16} The state's argument that the court accepted Brinkman's guilty plea only after the second colloquy also overlooks an essential requirement of Crim.R. 11(C)(2)(c)—that the trial court inform the defendant and ensure that the defendant understands that "by the plea the defendant is waiving" certain constitutional rights. It is clear from the record that the trial court did not advise Brinkman at the time that he entered his plea that by pleading guilty he was waiving his rights to confront the witnesses against him and to have the state prove his guilt beyond a reasonable doubt. The trial court therefore failed to strictly comply with Crim.R. 11(C)(2)(c) before it accepted Brinkman's guilty plea. Consequently, Brinkman did not have a "full understanding" that by pleading guilty, he would waive those two constitutional rights. *State v. Ballard*, 66 Ohio St.2d 473, 478, 423 N.E.2d 115 (1981) ("The criminal defendant's interest is having a full understanding of what rights he waives by pleading guilty. This interest is best protected when the trial court fully informs the defendant what those rights are"). Thus, Brinkman's guilty plea is invalid. *See Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, at ¶ 32.

{¶ 17} The trial court did not advise Brinkman of his constitutional rights to confront the witnesses against him and to have the state prove his guilt beyond a reasonable doubt until November 9, *four days after* he had entered and the court had accepted his guilty plea and after the state had presented evidence of Brinkman's guilt. The state contends that vacating the guilty plea would ignore the purpose of Crim.R. 11(C) and that holding that the trial court did not strictly comply here "would elevate form over substance," because nothing in the record indicates that Brinkman's plea was not knowingly, intelligently, and voluntarily made. But the purpose of Crim.R. 11(C)(2) is to require the trial court to "convey to the defendant certain information so that he can make a voluntary and intelligent decision whether to plead guilty" in the first place. *Veney* at ¶ 18. Informing the defendant of his constitutional rights *after* he has already pleaded guilty does not

support that interest. That is because when a defendant enters a plea of guilty he "simultaneously waives" his constitutional rights. *McCarthy v. United States*, 394 U.S. 459, 466, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969); *see also Class v. United States*, ___ U.S. ___, 138 S.Ct. 798, 805, 200 L.Ed.2d 37 (2018); *Ballard* at 478 ("a guilty plea is constitutionally infirm when the defendant is not informed in a reasonable manner *at the time of entering* his guilty plea" of his constitutional rights [emphasis added]). Here, the trial court accepted the guilty plea following an incomplete colloquy that omitted important warnings to Brinkman regarding his waiver of his constitutional rights. Additionally, the trial court never asked Brinkman during the second colloquy whether he still wished to plead guilty. As we emphasized in *Miller*, strict compliance with Crim.R. 11(C)(2)(c) is required when informing a defendant of his constitutional rights; substantial compliance will not do. 159 Ohio St.3d 447, 2020-Ohio-1420, 151 N.E.3d 617, at ¶ 16. We therefore reject the state's "form over substance" argument.

{¶ 18} We also reject the state's arguments that if Brinkman was confused about his waiver of his rights, then either he or his attorneys could have brought that issue to the panel's attention or sought to withdraw his guilty plea after the second colloquy. This court's decision in *Veney* makes clear, however, that a "court cannot simply rely on other sources to convey [constitutional] rights to the defendant." *Veney* at ¶ 29. And Crim.R. 11(C)(2)(c) makes clear that it is the trial court that "*shall not* accept a plea of guilty" without first informing the defendant of the constitutional rights he will waive by pleading guilty and determining that the defendant understands the waiver. (Emphasis added.) "It is the trial court's duty, therefore, to ensure that a defendant 'has a full understanding of what the plea connotes and of its consequence.' " *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶ 40, quoting *Boykin v. Alabama*, 395 U.S. 238, 244, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); *see also State v. Romero*, 156 Ohio St.3d 468, 2019-Ohio-1839, 129 N.E.3d 404, ¶ 18 ("A court's duty to ensure that

pleas are entered knowingly and voluntarily arises from the constitutional guarantee of due process").

{¶ 19} Based on this record, we hold that the trial court's failure to strictly comply with Crim.R. 11(C)(2)(c) before accepting Brinkman's guilty plea renders his plea invalid.

{¶ 20} We pause to note that this is not the first time that this court has addressed a trial court's obligations under Crim.R. 11. *See, e.g.*, *Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621; *Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462; *State v. Sarkozy*, 117 Ohio St.3d 86, 2008-Ohio-509, 881 N.E.2d 1224. Because of the essential constitutional rights that a defendant waives by pleading guilty, this court, time and time again, has emphasized the seriousness of the plea decision and the importance of a trial court's compliance with Crim.R. 11(C). *See, e.g.*, *Ballard*, 66 Ohio St.2d at 478-479, 423 N.E.2d 115; *Clark* at ¶ 25; *Veney* at ¶ 21; *Bishop*, 156 Ohio St.3d 156, 2018-Ohio-5132, 124 N.E.3d 766, at ¶ 10 (lead opinion); *Miller*, 159 Ohio St.3d 447, 2020-Ohio-1420, 151 N.E.3d 617, at ¶ 17. And as we have said before regarding trial courts' erroneous application of Crim.R. 11, "[i]n each instance, the trial court error was easily avoidable." *Clark* at ¶ 28. We therefore reiterate the advice that we have provided before: "The best way to ensure that pleas are entered knowingly and voluntarily is to simply follow the requirements of Crim.R. 11 when deciding whether to accept a plea agreement." *Id*. at ¶ 29. The court should use Crim.R. 11 as a checklist and explain the information to the defendant in a manner that can be easily understood, *see Miller* at ¶ 18 and *Veney* at ¶ 27. By paying particular attention to Crim.R. 11, the trial court can avoid errors such as failing to adequately explain constitutional rights either completely or partially.

{¶ 21} While there are benefits to pleading guilty, the defendant nevertheless loses several constitutional rights. *Clark* at ¶ 25, citing *Boykin*, 395 U.S. at 243, 89 S.Ct. 1709, 23 L.Ed.2d 274. Thus, "the exchange of certainty for

some of the most fundamental protections in the criminal justice system will not be permitted unless the defendant is fully informed of the consequences of his or her plea." *Id.* "What is at stake for an accused facing death or imprisonment demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." *Boykin* at 243-244.

{¶ 22} Here, the trial court, as well as counsel for the state and the defense, failed to adhere to the level of diligence expected in, and essential to, our criminal-justice system. The trial court failed to strictly comply with the requirements for a valid plea colloquy under Crim.R. 11(C)(2)(c) and neither the prosecutor nor defense counsel brought the omitted constitutional rights to the court's attention at the time of the initial plea colloquy. And even after the court noticed its omissions, during the second colloquy, it provided Brinkman with the bare minimum. It did not engage Brinkman in a full Crim.R. 11(C)(2) colloquy and never requested that Brinkman reenter his guilty plea. The court provided counsel for the state and the defense with the opportunity to approve or object to the colloquy and each agreed that it was "satisfactory." This inattention is impermissible, especially in a case such as this in which a death sentence is on the line. *See, e.g.*, *Clark* at ¶ 41 ("Fundamental fairness requires courts to hold themselves to exceedingly high standards when explaining the law to defendants who have waived constitutional rights").

### III. Conclusion

{¶ 23} Because the trial court failed to strictly comply with Crim.R. 11(C)(2)(c) before accepting Brinkman's guilty plea, we sustain proposition of law No. II. As a result, we need not reach Brinkman's remaining propositions of law. We vacate Brinkman's convictions and sentences and remand the cause to the Cuyahoga County Common Pleas Court for new proceedings.

Judgment vacated

and cause remanded.

KENNEDY, FISCHER, DEWINE, DONNELLY, STEWART, and BRUNNER, JJ., concur.

_____

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Brandon A. Piteo, Katherine E. Mullin, and Saleh S. Awadallah, Assistant Prosecuting Attorneys, for appellee.

Mark A. Stanton, Cuyahoga County Public Defender, and Jeffrey M. Gamso, Erika B. Cunliffe, and Noelle A. Powell, Assistant Public Defenders; and Kevin M. Cafferkey, for appellant.

_____