[Cite as *State v. Blanton*, 2025-Ohio-237.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
LAWRENCE COUNTY

| | | |
|---|---|---|
| State of Ohio, | : | Case No. 23CA35 |
| Plaintiff-Appellee, | : | <u>DECISION AND</u> <u>JUDGMENT ENTRY</u> |
| v. | : | |
| Shane C. Blanton, | : | **RELEASED 1/24/2025** |
| Defendant-Appellant. | : | |

_____

<u>APPEARANCES</u>:

Angela Miller, Jupiter, Florida, for appellant.

Brigham M. Anderson, Lawrence County Prosecuting Attorney, Ironton, Ohio, for appellee.
_____

Hess, J.

{¶1}   Shane C. Blanton appeals his conviction following a guilty plea to four counts of attempted murder and four counts of felonious assault. He raises three assignments of error. First, he contends that his guilty plea was not made voluntarily, knowingly, and intelligently because the trial court did not strictly comply with Crim.R. 11 and inform him that he was waiving his right to a jury trial. Second, he contends that the record does not clearly and convincingly support the trial court's imposition of consecutive sentences. Last, he contends that his trial counsel rendered ineffective assistance when it advised him to plead guilty to four counts of attempted murder and four counts of felonious assault when the crime of strangulation is applicable to his actions and imposes lesser penalties. He also contends his counsel was deficient for failing to demand a bill of particulars.

**{¶2}** We find that the trial court strictly complied with Crim.R. 11 (C)(2)(c) when it discussed his waiver of a right to a jury trial before it accepted his guilty plea, even though the review of the jury trial constitutional right came several moments before the trial court reviewed the remaining constitutional rights he was waiving. We find that the record in this case does not clearly and convincingly fail to support the trial court's consecutive-sentence findings. Last, we find that Blanton has failed to show that his trial counsel was deficient or that any alleged deficiencies resulted in prejudice to his defense.

**{¶3}** We overrule the assignments of error and affirm the trial court's judgment.

## I. FACTS AND PROCEDURAL HISTORY

**{¶4}** The Lawrence County grand jury indicted Blanton on a total of 38 counts: 8 counts of attempted murder in violation of R.C. 2903.02(A) and R.C. 2923.02(A), first-degree felonies; 12 counts of felonious assault in violation of R.C. 2903.11(A)(1), second-degree felonies; 14 counts of endangering children in violation of R.C. 2919.22(B)(2), third-degree felonies; 2 counts of pandering obscenity involving a minor in violation of R.C. 2907.321(A)(1), second-degree felonies; 1 count of resisting arrest in violation of R.C. 2921.33(B)(C), a fourth-degree felony; and 1 count of violating a protection order in violation of R.C. 2919.27(A)(1), a fifth-degree felony. He pleaded not guilty and not guilty by reason of insanity and requested a court-ordered competency evaluation. The court ordered a competency evaluation and Blanton was determined to be competent. Blanton requested a second competency evaluation, which the court ordered, and Blanton again was found to be competent. Blanton and the State stipulated to the conclusions of the competency evaluations.

{¶5}    Blanton and the State entered into a negotiated plea agreement without a recommended sentence in which Blanton pleaded guilty to four counts of attempted murder and four counts of felonious assault. The State agreed to dismiss the remaining 30 counts:  4 counts of attempted murder, 8 counts of felonious assault, 14 counts of endangering children, 2 counts of pandering obscenity involving a minor, 1 count of resisting arrest, and 1 count of violating a protection order.  Blanton signed a written guilty plea in which he affirmed, among other things, that he understood the charges and the constitutional rights he was waiving, that he was not induced or threatened to enter into the plea agreement, and that he had confidence in his trial counsel.

{¶6}    At the change of plea hearing, the trial court reviewed the change of plea form that Blanton signed, and he acknowledged that it was his signature on the form. The trial court then proceeded to review the right to a jury trial Blanton was waiving.

> COURT: Okay. The next form that I need to review with you is a form entitled "Waiver of Jury Trial". That is the form that I'm holding in my hand now. There does appear to be your signature on the form. Is that your signature, sir?
>
> DEFENDANT: Yes ma'am.
>
> COURT:  And prior to executing that form, did your attorney explain to you that you do have a right to a trial by jury in this matter, but that by executing the form you are waiving that right?
>
> DEFENDANT: He did.
>
> COURT: Did anyone force you to sign the form?
>
> DEFENDANT: No ma'am.

{¶7}    The trial court reviewed each of the eight counts to which Blanton pleaded guilty and asked him if he understood the nature of the charges and that the sentence for each count could be imposed consecutively to one another and Blanton stated that he

understood the charges and the penalties and that he was not under any mind-altering substances. The trial court then reviewed the constitutional rights Blanton was waiving in addition to the right to a jury trial the trial court had previously addressed:

COURT: All right. Despite your understanding in this matter, I am required to address with you some of your constitutional rights that you're going to be waiving as a result of entering pleas of guilty today. The first one is, sir, do you understand that you do have the right to confront witnesses who may testify against you at trial and that by proceeding today you are waiving that right?

DEFENDANT: Yes ma'am.

COURT: Do you understand that by entering your guilty plea that you're waiving your right to force the State to prove your guilt beyond a reasonable doubt as to each element of the crimes of which you've been charged?

DEFENDANT: Yes.

COURT: Do you understand that by entering your guilty pleas that you're waiving your right to compel and demand the attendance of witnesses at trial who may testify in your favor?

DEFENDANT: Yes.

COURT: Do you understand that you cannot be forced or compelled to testify against yourself at trial?

DEFENDANT: I do.

COURT: Do you understand that if you went to trial and decided not to testify that your silence cannot be used against you in attempt to prove your guilt?

DEFENDANT: Yes ma'am.

{¶8} The trial court then reviewed a number of sentencing, community control, and postrelease control matters, as well as whether Blanton was threatened or enticed by promises to enter the guilty pleas. Blanton then entered his guilty pleas and affirmed that the pleas were made of his free will. The trial court accepted his pleas, set the matter for a sentencing hearing, and ordered a presentence investigative (PSI) report.

**{¶9}** At the sentencing hearing, the State and Blanton stipulated to the presentation of certain evidence that would have been offered at trial. The trial court also reviewed the PSI report. Blanton raised two issues with the risk assessment evaluation contained in the PSI report: (1) Blanton's employment status at the time of his arrest and (2) whether he resided in a high-crime area. The trial court confirmed that if these 2 issues were resolved in Blanton's favor, the risk score would be brought down to a 23 (moderate risk) from the existing score of 25 (high risk).

**{¶10}** The State called Brian Chaffins, an investigator with the Lawrence County Drug and Major Crimes Unit, who testified that he became involved in the case because he has experience in retrieving evidence from digital devices. Investigator Chaffins executed a search warrant on Blanton's cell phone. The victim's mother's cell phone was also searched because the mother had informed law enforcement that she had taken pictures from Blanton's device and sent them to her cell phone so she would have proof of what was going on.  Investigator Chaffins testified that he retrieved a lot of evidence of child abuse and that evidence was pared down to the eight videos that supported the four attempted murder and four felonious assault counts to which Blanton pleaded guilty.

> STATE: Briefly describe that evidence to the Court, please.

> CHAFFINS: The first four videos are all of the child being strangled to the point of loss of consciousness. The second four videos are variations of . . . punches and more choking, may or may not have resulted in loss of consciousness.

**{¶11}** Investigator Chaffins testified that he had compiled the eight videos to a flash drive which was entered as an exhibit and was played for the trial court. The eight videos depict Blanton video recording himself with a two-year-old toddler. The multiple recordings show Blanton calmly setting up his cell phone camera, and then going up

behind the toddler, who appears initially to be calm, content, or at play in many of the videos. Multiple videos show Blanton suddenly grab the toddler and place him in a chokehold, with the toddler desperately kicking and helplessly dangling in the air. During the strangulation, the toddler initially struggles and makes audible gasping and vocal squeaking noises, but eventually the toddler's body goes limp and the audio goes quiet except for the sound of Blanton's heavy breathing as he continues to exert force against the toddler's throat.  After reviewing the eight videos, the State explained that the first four counts of attempted murder to which Blanton pleaded guilty were based on the videos in which Blanton strangled the toddler until there was a loss of consciousness, which could have resulted in death. The State also explained that there were additional videos that were retrieved from Blanton's phone that were not shown to the trial court, which would have been played for the jury had the matter proceeded to trial on all 38 counts.

**{¶12}** Due to the nature of the offenses, the State requested the maximum penalty on each count and for the sentences to run consecutively. The State argued:

> Your Honor, this is not only the worst form of the offense, but it was completed in a situation where the defendant was in loco parentis of this child. This is a two-year old little boy. . . . I don't know if there is a worse form of attempted murder that exists. I don't believe there is. I've been doing this nineteen years. I've never seen multiple counts of attempted murder on the same person. These obviously occurred in different places. They occurred at different times. They occurred each and every time while he was in authority over this child. . . . Not only were these horrendous acts performed by the defendant, they were videoed by the defendant, they were saved by the defendant, . . . . And this victim has suffered serious physical harm. He was treated at Children's Hospital. . . . During that treatment it was found that he also had methamphetamine . . . the two-year-old had methamphetamine in his system.

**{¶13}** Blanton's attorney discussed Blanton's educational background and work history, which showed that Blanton was a high school graduate and was employed as a

certified welder, but he started using methamphetamine four years ago and had "been on a downward spiral since." He argued that what the court saw on the videos "is a snippet in time" and that, but for the drugs, Blanton would not be before the court. Blanton's attorney asked "for something in the lower end of the sentencing guidelines."

{¶14} The trial court stated that it had considered the evidence, the PSI report, the parties' statements, and weighed the purposes and principals of sentencing in R.C. 2929.11, the seriousness and recidivism factors in R.C. 2929.12, and followed the guidance of R.C. 2929.13. It sentenced Blanton to 11 years on each of the 4 counts of attempted murder and 8 years on each of the 4 counts of felonious assault and ran the sentences consecutively for a total minimum prison term of 76 years, with an indeterminate sentence of up to an additional 5.5 years for a range up to 81.5 years in prison. The trial court stated:

> [T]he Court finds that consecutive sentences are necessary to punish the offender. Consecutive sentences are not disproportionate to the seriousness of the offender[']s conduct and to the danger the defendant poses to the public, and the defendant's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crimes of the defendant.

{¶15}   Blanton appealed.

## II. ASSIGNMENTS OF ERROR

{¶16} Blanton presents three assignments of error:

1. Appellant Blanton's guilty plea was obtained in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution and Crim.R. 11(C).

2. The record does not clearly and convincingly support the trial court's imposition of consecutive sentences for an aggregate prison term of 76-81.5 years, which is tantamount to a life sentence for Blanton. R.C. 2929.14(C)(4).

3. Trial counsel was ineffective in advising his client to plead guilty to four counts of attempted murder and four counts of felonious assault when Ohio enacted R.C. 2903.18, the strangulation of [sic] suffocation statute, which is applicable to this case and imposes lesser penalties. Further, counsel failed to demand a bill of particulars, which also caused Blanton to enter an unknowing, unintelligent, and involuntary plea. Blanton was deprived of his rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and Article I, Sections 10 and 16 of the Ohio Constitution.

## III.  LAW AND ANALYSIS

### A. Voluntary, Knowing, and Intelligent Guilty Plea

**{¶17}** In his first assignment of error, Blanton contends that his guilty pleas were not made voluntarily, knowingly, and intelligently because the trial court failed to inform him that he was waiving his constitutional right to a jury trial. He argues that under Civ.R. 11(C)(2)(c), the trial court must inform him that he is waiving the right to a jury trial and here the trial court did not strictly comply with that requirement. He argues, "Here there was a complete failure to advise Blanton that he was relinquishing his right to a jury trial." He acknowledges that the trial court did address his waiver of his right to a jury trial during the change of plea hearing, but contends that it was not made "<u>during the plea colloquy</u>" (emphasis in original) and that the State's contention that the jury trial waiver was explicitly addressed lacks merit because the State "reaches back to a brief discussion" during which the trial court discusses Blanton's understanding of the jury waiver form he signed.

### 1. Standard of Review

**{¶18}** Appellate courts apply a de novo standard of review when evaluating a plea's compliance with Crim.R. 11(C). *State v. Nero*, 56 Ohio St.3d 106, 108-109 (1990); *State v. Clark*, 2024-Ohio-4930, ¶ 8 (4th Dist.).

## 2. Legal Analysis

**{¶19}** Crim.R. 11(C)(2) governs the acceptance of guilty pleas by the trial court in felony cases and provides that a trial court should not accept a guilty plea without first addressing the defendant personally and making sure the defendant understands the constitutional rights the defendant is waiving:

> (c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

"In addition to these constitutional rights, the trial court must determine that the defendant understands the nature of the charge, the maximum penalty involved, and the effect of the plea" which are set forth in Crim.R. 11(C)(2)(a) and (b). *State v. Montgomery*, 2016-Ohio-5487, ¶ 41.

**{¶20}** When reviewing a defendant's constitutional rights (right to a jury trial, right to call witnesses, etc.), a trial court must strictly comply with Crim.R. 11(C)(2)(c). *State v. Veney*, 2008-Ohio-5200, ¶ 18. However, "strict compliance does not mean literal compliance." *State v. Adams*, 2016-Ohio-2757, ¶ 11 (4th Dist.). A court does not need to engage in "a word-for-word recitation of the criminal rule, so long as the trial court actually explains the rights to the defendant." *Id.* at ¶ 12, citing *Veney* at ¶ 27.

**{¶21}** In contrast, when reviewing a defendant's non-constitutional rights (maximum penalty involved, understanding effect of plea, etc.), a trial court must substantially comply with Crim.R. 11(C)(2)(a) and (b). *Veney* ¶ 18. " '[S]ubstantial compliance' means that 'under the totality of the circumstances the defendant subjectively

understands the implications of his plea and the rights he is waiving.' " *State v. Morrison*, 2008-Ohio-4913, ¶ 9 (4th Dist.), quoting *State v. Puckett*, 2005-Ohio-1640, ¶ 10 (4th Dist.); *State v. Tolle*, 2022-Ohio-2839, ¶ 8-11 (4th Dist.).

**{¶22}** Blanton challenges the trial court's strict compliance with Crim.R. 11(C)(2)(c) when it addressed his constitutional right to a jury trial. Blanton argues that the trial court failed because, although the trial court addressed the jury trial waiver with him, this was done during an earlier part of the hearing, prior to Blanton's guilty plea and several moments before the trial court addressed the other constitutional rights he was waiving.

**{¶23}** The record from the change of plea hearing shows that the trial court first had Blanton sworn in, then the court reviewed Blanton's right to a jury trial by reviewing the form with him, confirming his signature, and asking him if he understands that he is waiving the right to a jury trial, which he answers affirmatively.

> COURT: And prior to executing the form, did your attorney explain to you that you do have the right to a trial by jury in this matter, but that by executing the form you are waiving that right?
>
> DEFENDANT: He did.

**{¶24}** After this exchange, the trial court reviews the counts to which he has agreed to plead guilty and confirms that he understands the charges and penalties. Then the trial court reviews the remaining constitutional rights set out in Crim.R. 11(C)(2)(c). Blanton contends that the trial court's explanation of his jury trial right waiver is insufficient because, even though it was provided before the trial court accepted his guilty plea, it was not provided when the other rights in Crim.R. 11(C)(2)(c) were addressed. He cites *State v. Brinkman,* 2021-Ohio-2473 in support.

{¶25} In *Brinkman*, a capital murder case, the trial court did not advise the defendant that he was waiving his constitutional rights to confront the witnesses against him and to have the state prove his guilt beyond a reasonable doubt before the trial court accepted his guilty plea. However, four days later the trial court recognized its error after reviewing the hearing transcript and held a second plea hearing. At the second plea colloquy, the trial court advised the defendant of all the constitutional rights he was waving, but did not have him reenter his guilty plea. The Supreme Court of Ohio determined that this did not satisfy the strict compliance required when addressing the constitutional rights under Crim.R. 11(C)(2)(c):

> The trial court did not advise Brinkman of his constitutional rights to confront the witnesses against him and to have the state prove his guilt beyond a reasonable doubt until November 9*, four days after* he had entered and the court had accepted his guilty plea and after the state had presented evidence of Brinkman's guilt. The state contends that vacating the guilty plea would ignore the purpose of Crim.R. 11(C) and that holding that the trial court did not strictly comply here "would elevate form over substance," because nothing in the record indicates that Brinkman's plea was not knowingly, intelligently, and voluntarily made. But the purpose of Crim.R. 11(C)(2) is to require the trial court to "convey to the defendant certain information so that he can make a voluntary and intelligent decision whether to plead guilty" in the first place. *Veney* at ¶ 18. Informing the defendant of his constitutional rights *after* he has already pleaded guilty does not support that interest. That is because when a defendant enters a plea of guilty, he "simultaneously waives" his constitutional rights. *McCarthy v. United States*, 394 U.S. 459, 466, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969*); see also Class v. United States,* —— U.S. ——, 138 S.Ct. 798, 805, 200 L.Ed.2d 37 (2018); *Ballard* at 478, 423 N.E.2d 115 ("a guilty plea is constitutionally infirm when the defendant is not informed in a reasonable manner *at the time of entering* his guilty plea" of his constitutional rights [emphasis added]). Here, the trial court accepted the guilty plea following an incomplete colloquy that omitted important warnings to Brinkman regarding his waiver of his constitutional rights. Additionally, the trial court never asked Brinkman during the second colloquy whether he still wished to plead guilty. As we emphasized in *Miller,* strict compliance with Crim.R. 11(C)(2)(c) is required when informing a defendant of his constitutional rights; substantial compliance will not do. 159 Ohio St.3d 447, 2020-Ohio-1420, 151 N.E.3d 617, at ¶ 16. We therefore reject the state's "form over substance" argument.

(Brackets in original). *Brinkman* at ¶ 17.

**{¶26}** *Brinkman* is distinguishable. Here the trial court advised Blanton of his jury trial right *before* accepting his guilty plea. *Brinkman* does not require that the trial court inform Blanton of the constitutional rights he is waiving all together at the same time, one immediately after the other, in the plea colloquy. The trial court advised Blanton of the jury trial waiver earlier in the plea colloquy while it reviewed the "Waiver of Jury Trial" form, which made it logical and natural for the trial court to address the jury waiver with Blanton at that time. The trial court ensured that Blanton understood his right to a jury trial and that he was waiving it *before* accepting his guilty plea, which is all that the *Brinkman* holding requires.

**{¶27}** Blanton also cites *State v. Hermes*, 2023-Ohio-2011 (6th Dist.) for support. *Hermes* is likewise distinguishable. In *Hermes*, the trial court failed to comply with Crim.R.11(C)(2)(c) when it did not advise the defendant that he was waiving the right to a "jury" trial. The trial court used the term "trial" and never referred to a "jury trial" at any stage of the colloquy. *Id.* at ¶ 7; *see also State v. Thomas*, 2018-Ohio-2815, ¶ 13-15 (7th Dist.). However, here the trial court used the term "jury" to describe the trial Blanton was waiving when it stated, "you do have the right to a trial by jury in this matter."

**{¶28}** We find that the trial court strictly complied with the Crim.R. 11(C)(2)(c) requirement that it explain that Blanton has a right to a jury trial and that he was waiving that right by pleading guilty. We overrule the first assignment of error.

### B. Consecutive Sentences

**{¶29}** There is no dispute that the trial court made each of the findings required by the consecutive-sentencing statute. However, Blanton contends that the record does

not support the trial court's imposition of consecutive sentences for an aggregate prison term of 76 to 81.5 years. Specifically, he argues that the record does not support the trial court's findings involving the proportionality of the sentence to the seriousness of his conduct or the danger he poses to the public under R.C. 2929.14(C)(4)

### 1. Standard of Review

{¶30} An appellate court should give broad deference to a trial court's sentencing decision and not serve as a "second-tier sentencing court."

> Ordinarily, appellate courts defer to the broad discretion trial courts have in making sentencing decisions, and R.C. 2953.08(G) reflects that deference. That makes sense: the trial judge presided over the trial and heard the witnesses testify, the defendant made his allocution to the sentencing judge directly, and the trial judge will often have heard directly from the victims at sentencing. Thus, an appellate court's role is not to be a "second-tier sentencing court." Appellate courts possess no inherent right to review a felony sentence. Indeed, "[e]xcept to the extent specifically directed by statute, 'it is not the role of an appellate court to substitute its judgment for that of the sentencing court as to the appropriateness of a particular sentence.' "

(Citations omitted.) *State v. Glover*, 2024-Ohio-5195, ¶ 39.

{¶31} R.C. 2953.08(G)(2) provides the sole basis for the appellate court's review of consecutive sentences:

> The court hearing an appeal [of a felony sentence that includes consecutive sentences] . . . shall review the record, including the findings underlying the sentence or modification given by the sentencing court.
> The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:
>
> (a) That the record does not support the sentencing court's findings under . . . (C)(4) of section 2929.14 . . . ;
>
> (b) That the sentence is otherwise contrary to law.

This statute does not allow an appellate court to reverse or modify a sentence on the basis that the trial court abused its discretion. *Glover* at ¶ 45.

**{¶32}** An appellate court can increase, decrease, or otherwise modify consecutive sentences only if it clearly and convincingly finds that the record does not support the trial court's findings or it clearly and convincingly finds that the sentence is contrary to law. *Glover* at ¶ 42. " '[C]lear and convincing evidence' is a degree of proof that is greater than preponderance of the evidence but less than the beyond-a-reasonable-doubt standard used in criminal cases." *Id.* at ¶ 46. "Nowhere does the appellate-review statute direct an appellate court to consider the defendant's aggregate sentence." Instead, we limit our review to the trial court's consecutive-sentencing findings under R.C. 2929.14(C). *Id.* at ¶ 43. Nor does the statute allow an appellate court to reverse or modify a sentence on the basis that the trial court abused its discretion. *Id.* at ¶ 45.

## 2. Legal Analysis

**{¶33}** Blanton's first argument focuses on the types of sentences given to other criminal defendants in other cases and argues that his sentence was disproportion in comparison to their crimes. He argues that "a selection of Ohio cases reveal[s] long sentences for attempted murder and felonious assault but none as lengthy as Blanton's prison term." Our focus is not on whether his sentence is disproportion to someone else's crimes, but whether his sentence is disproportionate to his crimes. We reject this consistency-in-sentencing argument because Blanton did not preserve it by placing any evidence of it on the record at the sentencing hearing for the trial court's consideration. *State v. Pierce*, 2024-Ohio-82, ¶ 64 (4th Dist.).

**{¶34}** In *Pierce* we explained, "the defendant must raise this issue before the trial court and present some evidence, however minimal, to provide a starting point for analysis and to preserve the [consistency] issue for appeal." *Id.* at ¶ 61, citing *State v. Jones,* 2013-Ohio-3141, ¶ 17 (8th Dist.); *State v. Watson,* 2024-Ohio-4992, ¶ 20-21 (4th Dist.). The plain language of the criminal sentencing review statute limits us to a review of the trial court record. We can modify Blanton's sentence only if we clearly and convincingly find the record does not support the trial court's findings.

**{¶35}** Blanton also argues that murder is a more serious crime than attempted murder or felonious assault and that a murderer "may have the opportunity to be paroled after 15 years. Blanton, who did not take a life, will have no chance of parole at . . . even 50 years." While it is true that some who murder may be paroled, many others receive the death penalty or life in prison without parole. But these other criminal cases are not part of the record we review when determining the proportionality of the sentence to Blanton's crimes. "[T]he appellate-review statute asks a court of appeals to review whether the record clearly and convincing does not support the trial court's findings, . . . it does not ask the court of appeals to engage in a comparative analysis of other cases." *State v. Glover,* 2024-Ohio-5195, ¶ 59 (the court of appeals strays from its role when it compares a defendant's sentence to the sentences imposed in other cases).

**{¶36}** Next Blanton argues that the record clearly and convincingly does not support the trial court's finding that consecutive sentences are not disproportionate to the seriousness of his conduct and the danger he poses to the public. He argues that his criminal history consisted mostly of misdemeanors, with only one prior felony conviction. However, the record shows that, except for his drug-related misdemeanors, his criminal

record shows a long history of misdemeanors that put the public in danger: operating a vehicle under the influence; leaving the scene of an accident; domestic violence; improper handling of a firearm in a motor vehicle; aggravated menacing; and violation of a protection order. Blanton argues, "Removing Blanton's acts in this case, his history or past conduct does not indicate that he poses a danger to the public." However, Blanton's acts in this case are the reason he is being sentenced. "The proportionality prong . . . focuses on the defendant's *current conduct* . . . ." (emphasis added) *Glover* at ¶ 53. As we explain below, we do not clearly and convincingly find that the record does not support the trial court's findings on consecutive sentences.

**{¶37}** The trial court reviewed the eight videotapes that recorded the crimes Blanton perpetrated multiple times against an innocent, vulnerable, two-year-old toddler. Blanton took the time to carefully set up his cell phone camera so he could capture his strangulation of the toddler and the noises those crimes made on the audio. Each time he did this calmly, without even the slightest provocation. The investigator testified that there were multiple videos he procured from Blanton's phone and that only 8 were being presented because they matched up to 8 of the 38 counts to which Blanton had pleaded guilty. At the sentencing hearing Blanton's own trial counsel acknowledged, "looking at these, these are horrific videos . . . ."

**{¶38}**   In discussing the videos, the trial court found:

The videos revealed that the defendant took time to set up and adjust his camera prior to beginning to commit acts of violence against the child. The acts committed against the very small child were premediated and unprovoked. Further the multiple recordings are not indicative of a temporary lapse in judgment, moment of rage or loss of control. Instead, the recordings are evidence of the crimes of which the defendant stands charged but also acts that can only be described as disturbingly revolting, vile and depraved. The Court intentionally imposed the maximum penalty

permitted by law as to each and every count after considering the statutory factors and considering the likelihood of recidivism, the danger to the public and the need to protect the public from future crimes of the defendant as well as the Court's desire to appropriately punish the defendant. To impose any lesser of a sentence would be unjust, insufficient and inappropriate as it would demean the seriousness of the defendant's conduct and would potentially place the public in danger of the defendant in the future.

**{¶39}** We have reviewed the entire record, including the video recordings, Blanton's criminal history, the PSI report, and the testimony presented at the hearings. The trial court found that consecutive sentences were necessary to punish Blanton, were not disproportionate to the seriousness of his conduct or the danger he poses to the public and that Blanton's criminal history demonstrated that consecutive sentences are necessary to protect the public from future crimes by Blanton. We find that the record in this case does not clearly and convincingly fail to support the trial court's imposition of consecutive sentences.

**{¶40}** We overrule the second assignment of error.

### C. Ineffective Assistance of Counsel

**{¶41}** For his final assignment of error, Blanton contends that his trial counsel was ineffective for failing to advise his client, the State, and the court about the strangulation statute, R.C. 2903.18. He contends that the strangulation statute targets domestic violence, and the felony level of charges range from second-degree felony to fifth-degree felony. Blanton also contends that his trial counsel was deficient for failing to ask for a bill of particulars so that he can understand what he is defending against. Blanton argues that he was prejudiced because there was "a reasonable probability that but for counsel's erroneous advice Blanton would not have entered a guilty plea but would have proceeded

to trial." He contends that he was unable to argue a lesser more applicable strangulation charge to a jury and receive a lesser penalty.

### 1. Standard of Review

**{¶42}** "Upon direct appeal, appellate courts generally review claims of ineffective assistance of counsel on a de novo basis, simply because the issue originates at the appellate level; no trial court has ruled on the issue. Appellate courts review the trial record and are left to judge from the bare record whether the assistance was effective." *State v. Gondor*, 2006-Ohio-6679, ¶ 53. "To establish constitutionally ineffective assistance of counsel, a defendant must show (1) that his counsel's performance was deficient and (2) that the deficient performance prejudiced the defense and deprived him of a fair trial." *State v. Jenkins*, 2014-Ohio-3123, ¶ 15 (4th Dist.), citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Failure to satisfy either part of the test is fatal to the claim. *See Strickland* at 697. The defendant "has the burden of proof because in Ohio, a properly licensed attorney is presumed competent." *Gondor* at ¶ 62.

**{¶43}** " 'In order to show deficient performance, the defendant must prove that counsel's performance fell below an objective level of reasonable representation.' " *State v. Adams*, 2016-Ohio-7772, ¶ 89 (4th Dist.), quoting *State v. Conway*, 2006-Ohio-2815, ¶ 95. When considering counsel's performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Strickland* at 689, quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955). " 'To show prejudice, the defendant must show a reasonable probability that, but for counsel's errors,

the result of the proceeding would have been different.' " *Adams* at ¶ 89, quoting *Conway* at ¶ 95. "Generally, a guilty plea waives all appealable errors, including claims of ineffective assistance of counsel, except to the extent that the alleged errors precluded [the defendant] from knowingly, intelligently and voluntarily entering [the] guilty plea." *State v. Tingler*, 2022-Ohio-3792, ¶ 11 (4th Dist.); *State v. Freeman*, 2023-Ohio-3835, ¶ 6-7 (4th Dist.).

## 2. Legal Analysis

{¶44} "[A] defendant who claims ineffective assistance of counsel related to the decision to plead guilty must show that a reasonable probability exists that, but for counsel's errors, the defendant would not have pleaded guilty and insisted on going to trial." *State v. Jackson*, 2023-Ohio-3895, ¶ 29 (4th Dist.). Blanton "must do more than present 'post hoc assertions . . . about how he would have pleaded but for his attorney's deficiencies.' " *State v. Romero*, 2019-Ohio-1839, ¶ 28, quoting *Lee v. United States*, 582 U.S. 357, 368 (2017). "In assessing whether it would be rational for a defendant to go to trial instead of pleading guilty, the court should consider the totality of circumstances." *Romero* at ¶ 29.

{¶45} The strangulation statute, R.C. 2903.18 became effective April 4, 2023. The indictment states that the crimes Blanton committed occurred from November 1, 2022 to April 5, 2023, with the crime of resisting arrest by striking a law enforcement officer occurring on April 5, 2023. Blanton has made no argument that the strangulation statute had retroactive application to his acts or that any of his violent acts against the toddler occurred during a 24-hour period on April 4, 2023, the single day that the strangulation statute overlaid his criminal activity. Therefore, Blanton has not shown that his attorney

was deficient for failing to raise this statute where it has questionable applicability to his case. Additionally, it is speculative to believe that Blanton was prejudiced in any way by his attorney's failure to raise the strangulation statute. It is speculative to believe that the State would have modified its plea offer in a manner that would have reduced Blanton's possible maximum prison term. Blanton was indicted on 38 counts, 8 counts were first-degree felonies, 14 counts were second-degree felonies, 14 counts were third-degree felonies, and 1 count was a fourth-degree felony and 1 a fifth-degree felony. And there is no reason to believe that had Blanton proceeded with a jury trial, the State would not have tried all 38 felony counts and introduced at trial, not just the 8 videos shown at sentencing, but the multitude of videos the investigator testified were procured from Blanton's phone. Again, it is pure speculation to believe that Blanton would not have entered into a plea agreement or that he would have believed there was a reasonable probability that a jury trial outcome on 38 felony counts (with the video evidence the jury would view) would have resulted in a more favorable outcome for Blanton then entering a guilty plea to 8 felony counts.

{¶46} Blanton has likewise failed to show his attorney was deficient in failing to ask for a bill of particulars. "A bill of particulars has a limited purpose—to elucidate or particularize the conduct of the accused alleged to constitute the charged offense." *State v. Haynes,* 2022-Ohio-4473, ¶ 23. "A bill of particulars is not designed to provide the accused with specifications of evidence or to serve as a substitute for discovery." *Id.*

{¶47} The record shows that although Blanton's counsel did not request a bill of particulars, trial counsel made several discovery requests. One discovery request was made very early in the proceedings when trial counsel was appointed. A second, detailed

11-page discovery request that sought 35 different categories of documents, witness statements, evidence, etc. was made about 8 weeks later. Blanton's counsel stated that he had obtained and reviewed the video evidence the State had of the criminal acts he committed. Because Blanton had received discovery responses from the State, the question is whether a bill of particulars would have provided him additional facts such that he was precluded or hindered from effectively presenting a defense. Blanton has failed to demonstrate that his lack of knowledge concerning the specific facts a bill of particulars would have provided him prejudiced him in his ability to fairly defend himself or evaluate the State's plea offer.

{¶48} Here, Blanton has presented only post hoc assertions that he would have gone to trial on a 38-felony-count indictment instead of pleading guilty to only 8 felonies if his attorney would have raised the strangulation statute and requested a bill of particulars. Additionally, the State's evidence in the case involved multiple videos that indisputably show Blanton committing heinous acts of violence against a small, helpless child. "A defendant without any viable defense will be highly likely to lose at trial. And a defendant facing such long odds will rarely be able to show prejudice from accepting a guilty plea that offers him a better resolution than would be likely after trial. But that is not because the prejudice inquiry in this context looks to the probability of a conviction for its own sake. It is instead because defendants obviously weigh their prospects at trial in deciding whether to accept a plea." *Lee v. United States,* 582 U.S. at 367.

{¶49} Blanton has failed to show that his counsel's performance was deficient, and that the deficient performance prejudiced the defense. We overrule the third assignment of error.

## IV. CONCLUSION

**{¶50}** We find that the trial court strictly complied with Crim.R. 11(C)(2)(c), the record does not clearly and convincingly fail to support the imposition of consecutive sentences, and Blanton has failed to establish an effective assistance of counsel claim. We overrule his assignments of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED and that appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the LAWRENCE COUNTY COURT OF COMMON PLEAS to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted. The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Wilkin, J.: Concur in Judgment and Opinion.

For the Court

BY: _____
        Michael D. Hess, Judge

## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**